THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | :  3:23-CR-301 |
| | :  (JUDGE MARIANI) |
| PAUL HELRING, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

On November 27, 2023, an Information was filed charging Defendant Paul Helring with one count of Theft Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(1)(A) (Doc. 1). That same day, a Plea Agreement was filed of record, signed by Defendant Helring, his counsel, and the Assistant U.S. Attorney assigned to the above-captioned action (Doc. 3). The action was thereafter assigned to the undersigned. Defendant's arraignment and change of plea hearing is scheduled to be held on January 25, 2024 (Doc. 4).

On January 12, 2024, Defendant filed a "Motion to Strike Related Case Designation and for Application of the Middle District's Random Case Assignment Procedure" (Doc. 6) and supporting brief (Doc. 7). The Government timely filed a Brief in Opposition (Doc. 9).

The basis for Defendant's Motion is that, because the Government wrote "Related case information: Jeffrey Vaughn 22-CR-303-RDM" under the "Additional Information or Comments" section of the Criminal Cover Sheet of the above-captioned action, it was assigned to the undersigned rather than being randomly assigned to a judge in the Middle

District of Pennsylvania. Defendant asserts that his case is not related to that of Vaughn, a Scranton Police Officer who previously pled guilty to a violation of 18 U.S.C. § 666(a)(1)(A) and was sentenced by this Court on May 4, 2023 (*see generally,* 3:22-cr-303-RDM), and thus requests that the "related case" designation be stricken and that the case be subject to a random reassignment.

> Pursuant to 28 U.S.C. § 137 ("Division of business among district judges"):
>
> The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.
>
> The chief judge of the district court shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases so far as such rules and orders do not otherwise prescribe.

28 U.S.C. § 137(a). The Third Circuit Court of Appeals has explained:

> As other Courts of Appeals have recognized, this statute "vests the district court with broad discretion in assigning court business to individual judges," and does not require the formal adoption of any particular assignment procedure. *United States v. Diaz*, 189 F.3d 1239, 1243 (10th Cir. 1999) (rejecting challenge to informal rotating assignment system). Whether considered under this statute or under principles of due process, litigants "do[ ] not have a right to have [their] case heard by a particular judge," have "no right to any particular procedure for the selection of the judge," and "do[ ] not enjoy the right to have the judge selected by a random draw." *United States v. Pearson*, 203 F.3d 1243, 1256 (10th Cir. 2000) (citations omitted) (collecting cases).

*In re Atamian*, 247 F.App'x 373, 374 (3d Cir. 2007).

Although the Middle District of Pennsylvania does not have a local rule or written standard for related-case designations, as recognized by another Judge in this District, the court should look to whether there is a common core of operative facts and whether the

2

cases are sufficiently factually similar when determining whether a case warrants a "related-case designation." See Kendall v. Int'l Dev. Corp., Case No. 4:22-cv-518, Doc. 3.

Here, Defendant Helring's assertion that this case is unrelated to U.S. v. Vaughn appears disingenuous. As noted by the Government,

> both criminal prosecutions arose from the same investigation, namely, an investigation into potential overtime fraud by Scranton police officers in connection with the Scranton Police Department's extra duty overtime program. That investigation revealed as to Vaughn and Helring: (1) that both men stole in the same way, by being paid for shifts that they did not work; (2) that both men used similar methods to accomplish the fraud, by signing up for shifts that they did not intend to work and then falsifying log sheets to mask the fraud; (3) that both men did this over an overlapping time period; and (4) that both men victimized the same victims, the housing complexes that were the main victims of the fraud.

(Doc. 9, at 5). Specifically, upon review of the Informations filed in Helring and Vaughn's criminal cases, the common core of alleged operative facts include, but are not limited to:

- The involvement of the defendants in the theft of public funds from the Scranton Police Department, which received annual benefits, in the form of federal grants, from the United States in excess of $10,000.00. (3:23-cr-301, Doc. 1 (hereinafter "Helring Information"), ¶¶ 1, p. 6-14; 3:22-cr-303, Doc. 1 (hereinafter "Vaughn Information"), ¶¶ 1, p. 4-5).

- The federal funds at issue funded police patrols for certain apartment complexes in Scranton, including Village Park Apartments, referred to as "Housing Unit 2" in both Informations, Midtown Apartments, referred to as "Housing Unit 3" in both Informations, and Hilltop Manor and Valley View Terrace, referred to as "Housing

Unit 4" in both Informations. (Helring Information, ¶¶ 3, 4, 5; Vaughn Information, ¶¶ 2, 3, 4).[1]

- Both Defendants were police officers with the Scranton Police Department in 2021 and 2022, at the time of the operative criminal allegations. (Helring Information, ¶ 6; Vaughn Information, ¶ 5).

- During the relevant time frame, including in 2021 and 2022, both Helring and Vaughn signed up to work "extra duty assignments" which included roving patrols at certain apartment complexes, including Housing Units 2, 3, and 4. (Helring Information, ¶¶ 8, 10; Vaughn Information, ¶ 6). Helring was also responsible for overseeing and managing the scheduling of Scranton Police Officers for the patrol shifts at these locations. (Helring Information, ¶ 6). Helring was paid at a rate between approximately $33.90 and $34.42, and Vaugh at a rate of approximately $34.42, for each hour of each patrol shift that they claimed to work. (Helring Information, ¶ 10; Vaughn Information, ¶ 7).

---

[1] Helring is further charged with engaging in fraudulent acts involving Skyview Apartments ("Housing Unit 1").

- In 2021 and 2022, both police officers obtained compensation paid to them for extra duty police patrol shifts at local Housing Units 2, 3, and 4, that they claimed to have worked but did not work. (Helring Information, ¶ 13, p. 13-14, see also, id. at ¶¶ 17-20; Vaughn Information, p. 4-5).

These shared facts alleged in the Informations of Helring and Vaughn, all arising out of the same investigation of fraud by Scranton police officers, make clear that the above-captioned action is closely related to the Vaughn criminal action.[2]

Moreover, assuming that the above-captioned action was not randomly assigned, but rather assigned to the undersigned because it was deemed by the Government (and now by this Court) to be "related" to the Vaughn case, Defendant does not set forth any legitimate basis for the action to be re-assigned or subject to the Middle District of Pennsylvania's random case assignment procedure.

Although Defendant does not allege that the "related case" designation, and this case's assignment to the undersigned, violates his Due Process rights, the Court notes that

---

[2] For unknown reasons, Defendant expends significant effort to argue that his case is unrelated to Vaughn's case because Vaughn has been sentenced and his case is closed and no longer "pending". (See Doc. 7, at 2, 4-8). Although it is undisputed that the Middle District does not have local rules governing the standard for case-related designation, there is no reasonable basis to distinguish between the relatedness of cases which are pending rather than closed. Courts within the Third Circuit with Local Rules addressing the assignment of related cases have expressly declined to recognize this distinction. See E.D. Pa. L.R. 50.1(d)(3) ("At the time of filing any criminal indictment or information, counsel for the government shall indicate whether a case is related to any other prior or pending action in this court."); W.D. Pa. L.Cr.R. 57(C) ("At the time of filing any criminal action or entry of appearance or any initial pleading or motion by defense counsel, as the case may be, counsel shall indicate on an appropriate form whether the action is related to any other pending or previously terminated actions in this Court.").

any such argument has been rejected by a number of District and Circuit Courts. As noted by the Seventh Circuit:

> A non-randomly assigned judge, without more, simply does not make for a due process violation. . . . The Fifth Amendment's due process clause guarantees the right to an impartial decisionmaker, e.g., *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 617, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), but not to a particular judge, *United States v. Braasch,* 505 F.2d 139, 147 (7th Cir.1974). And in *United States v. Keane,* 522 F.2d 534, 557 (7th Cir.1975), we adopted the reasoning of a district court which ruled that an individual does not have a due-process right to a randomly assigned judge. *See United States v. Keane,* 375 F.Supp. 1201, 1204 (N.D.Ill.1974). In *Tyson v. Trigg,* 50 F.3d 436, 439–42 (7th Cir.1995), we upheld the constitutionality of a case assignment system that permitted prosecutors to play an active role in selecting trial judges, although we described the system as "unsightly." Other courts to have considered the question agree that due process does not demand random assignment of judges. *Cruz v. Abbate,* 812 F.2d 571, 574 (9th Cir.1987) (assignments need not be random and can be made for any reason, so long as it is not made in a biased manner "or [with] the desire to influence the outcome of the proceedings"); *United States v. Osum,* 943 F.2d 1394, 1400-1401 & n. 3 (5th Cir.1991) (suggesting that no enforceable right prevents a court from ignoring local rules in an effort to steer a case to a given judge); *see also* 28 U.S.C. § 137 (leaving it to individual courts to determine how they divide their business); 28 U.S.C. § 1407(a), (b) (assignment to particular judges by the panel on multidistrict litigation); *Bd. of Sch. Dirs. of the City of Milwaukee v. State of Wisconsin,* 102 F.R.D. 596, 598 (E.D.Wis.1984) (related pending cases may be transferred to a single judge); *United States v. Isaacs,* 493 F.2d 1124, 1168 (7th Cir.1974) (panel of non-Seventh Circuit judges constituted by the Chief Justice of the United States after mass recusal).

*Firishchak v. Holder,* 636 F.3d 305, 309-310 (7th Cir. 2011). *See also, United States v. Forbes,* 150 F.Supp.2d 672, 681 (D.N.J. 2001) ("The Court has reviewed the cases cited by Forbes in support of the contention that his Due Process rights are implicated by the government's alleged involvement in the assignment of this matter and concludes that

Forbes has made no showing of any harm to his Due Process rights. The cases which discuss this issue overwhelmingly conclude that due process concerns are not implicated by the assignment of judges in a criminal matter unless the criminal defendant can point to some specific prejudice.").

There is further no basis to conclude that Helring is prejudiced by the assignment of his case to the undersigned.  Defendant does not assert that the undersigned "harbors any potential bias that might reasonably call [his] impartiality into question", that the case assignment procedure has been "manipulated", or that the assignment of his case "has been made for an improper purpose", In re Atamian, 247 F.App'x at 374.  Nor does Defendant set forth any other basis for a finding of prejudice.  Rather, Defendant repeatedly claims that he has "no objection" if this case were to be randomly reassigned to the undersigned.  (Doc. 7, at 1, 8).

Finally, the Court notes Defendant's statement that the "policy of random assignment of cases is credited across the country with fostering 'greater public confidence in the integrity of the judicial process, guarantee[s of] fair and equal distribution of cases to all judges, avoid[ance of] public perception or appearance of favoritism in assignments, and reduc[tion of] opportunities for judge shopping." (Doc. 7, at 1) (quoting Comm. on Judiciary v. McGahn, 391 F.Supp.3d 116, 118 (D.D.C. 2019)).  Preliminarily, this statement was made by the District Court of Columbia when commenting on the purpose of *its own* "general rule" and citing to its own Local Rules of *civil* procedure.  Nonetheless, even

accepting the important principles which generally favor the random assignment of cases, Defendant has not provided any explanation as to how the assignment of the present action to the undersigned conflicts with the D.C. District Court's stated purposes for the random assignment of cases. As noted, Helring does not contend that he is prejudiced by the assignment of this case to the undersigned or that there was any "favoritism" in the assignment of this case, nor is there any issue as to the fair and even distribution of cases within the Middle District of Pennsylvania. Rather, the above-captioned action and *Vaughn* are related cases and share a common core of operative facts arising out of the same criminal investigation and involving the same criminal charges. Helring's undeveloped policy arguments are therefore misplaced in the present action.

For the reasons set forth herein, Defendant's "Motion to Strike Related Case Designation and for Application of the Middle District's Random Case Assignment Procedure" (Doc. 6) will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge